<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **COURTNEY PORETSKIN,** : | |
| : | |
| Plaintiff, : | Civil Action No. 23-22613 (SDW) (MAH) |
| : | |
| v. : | |
| : | |
| **CHANEL, INC., et al.,** : | **REPORT AND RECOMMENDATION** |
| : | |
| Defendants. : | |

**MICHAEL A. HAMMER, United States Magistrate Judge**

**I.     INTRODUCTION**

This matter is before the Court on Plaintiff's motion to remand.  *See* Pl.'s Mot. to Remand, D.E. 8.  Defendant Chanel, Inc. ("Chanel") opposed the motion and filed a cross-motion to dismiss this action and compel arbitration or, alternatively, transfer this matter to the United States District Court for the Southern District of New York.  Cross Mot. to Dismiss. D.E. 11.  The Honorable Susan D. Wigenton, United States District Judge, referred these motions to the Undersigned for a Report and Recommendation.  Pursuant to Federal Rule of Civil Procedure 78, and Local Civil Rule 78.1, the Court decided these motions without oral argument.  For the reasons set forth below, the Undersigned respectfully recommends that the District Court deny Plaintiff's motion to remand, grant Chanel's request to transfer this matter to the Southern District of New York, and deny without prejudice Chanel's request to dismiss this action and compel arbitration.

**II.    BACKGROUND**

On October 5, 2023, Plaintiff filed a two-count Complaint in the Superior Court of New Jersey, Law Division, Middlesex County, against Defendants Chanel, Carl Poulter ("Poulter"), Lisa Gasperini ("Gasperini"), and various John Does.  Notice of Removal, Ex. 1, Compl., D.E. 1-1.  Plaintiff filed a First Amended Complaint on November 16, 2023.  *Id.*, Ex. 2, Am. Compl., D.E. 1-2.  According to the First Amended Complaint, Chanel employed Plaintiff starting in 2010.  *Id.* at ¶ 4.  Plaintiff rose through the ranks at Chanel and, by April 2022, she was the Director of Fashion Quality and Aftersales.  *Id.*  In that capacity, Plaintiff reported to Carl Poulter, who oversaw fashion, fine jewelry supply chains, watches, and aftersales.  *Id.*  In turn, Mr. Poulter reported to Jose Monsanto.  *Id.*  Lisa Gasperini was a Human Resources Representative for Chanel.  *Id.* at ¶ 3.

According to the First Amended Complaint, in or around April 2022, Defendant Poulter began to discriminate against Plaintiff on the basis of her gender, and subjected her to sexual harassment, and disparate treatment.  *Id.* at ¶¶ 8-19.  Plaintiff asserts that when she complained of the treatment, she suffered retaliation, particularly by Poulter.  *Id.*  Thereafter, she experienced a hostile work environment, culminating in her termination in January 2023.  *Id.*

The First Amended Complaint brings claims against Defendants for discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD") N.J.S.A. 10:5-1 *et seq.* and for breach of contract in violation of NJLAD, New Jersey Wage Payment Law, N.J.S.A. § 34:11–4.1, *et seq.*, and the New Jersey Wage and Hour Law, N.J.S.A. § 34:11–56a, *et seq.*  Plaintiff seeks compensatory damages, consequential damages, punitive damages, back pay, front pay, and benefits.  Am. Compl., D.E. 1-2, Count I & II.

With respect to the breach of contract claim, Plaintiff contends that she executed an employment agreement with Chanel on February 9, 2018 ("Employment Agreement"), in which they agreed to pay her severance benefits. *Id.* at ¶ 21. Plaintiff asserts that Gasperini informed her at her termination meeting that she would not be receiving severance benefits. *Id.* at ¶ 22. As of the date Plaintiff filed her First Amended Complaint, she has not received any severance benefits in violation of the Employment Agreement. *Id.*

Plaintiff served the Amended Complaint on Chanel via e-mail on November 20, 2023. Notice of Removal, D.E. 1, ¶ 4. Chanel removed the matter here on November 22, 2023 on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1441 and 1446 based on diversity of citizenship under 28 U.S.C. § 1332(a). *Id.* at 1. In the Petition for Removal, Chanel contends the amount in controversy exceeds $75,000 and there is complete diversity between Plaintiff, a citizen of New Jersey, and the only served Defendant, Chanel, a corporation incorporated under the laws of New York with a principal place of business in New York. Notice of Removal, D.E. 1, ¶¶ 7, 8, 10, 12, 17.

Plaintiff now moves to remand this matter to the Superior Court of New Jersey, Law Division, Middlesex County pursuant to 28 U.S.C. § 1447 (c). *See* Mot. to Remand, D.E. 8. Plaintiff submits that there is a lack of complete diversity between the parties because Defendant Poulter is a New Jersey resident and was properly served on October 9, 2023. Mem. of Law in Supp., D.E. 8-2, at 4. Chanel opposes the motion to remand and cross-moves to dismiss and compel arbitration, or alternatively, transfer this matter to the Southern District of New York. Cross Motion, D.E. 11. Plaintiff filed a brief opposing the cross motion and asserting that service was proper. Br. in Opp., D.E. 12.

3

### III.    DISCUSSION

#### A. PLAINTIFF'S MOTION TO REMAND

Plaintiff maintains that this matter must be remanded to state court because there is a lack of complete diversity between the parties as both Plaintiff and Poulter are citizens of New Jersey. Mem. of Law in Supp., D.E. 8-2, at 4. Chanel responds that that there is complete diversity because Plaintiff failed to properly serve Poulter. Br. in Opp., D.E. 12, at 1, 9-11. Therefore, Chanel reasons that it, a New York corporation, is the only properly served Defendant, and diversity of citizenship indeed exists.[1] *Id.* For the reasons herein, the Court agrees.

The Court cannot exercise jurisdiction over a party that has not been properly served. *Sportscare of Am., P.C. v. Multiplan, Inc.*, No. 10-4414, 2011 WL 589955, at *1 (D.N.J. Feb. 10, 2011); *Reddy v. MedQuist, Inc.*, No. 06-4410, 2009 WL 2413673, at *2 (D.N.J. Aug. 4, 2009). Moreover, the party asserting the validity of the purported service bears the burden of proof. *Reddy*, 2009 WL 2413673, at *2; *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993). Here, Plaintiff bears the burden of establishing that service of process was effectuated on Poulter because she is the party asserting the validity of the service.

Federal Rule of Civil Procedure 4(e), which governs service of process over individuals, states:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
>> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

---

[1] No party argues that Gasperini was served at the time of Removal. Similarly, Plaintiff does not challenge Chanel's contention that it is a New York corporation for purposes of diversity jurisdiction. Accordingly, this Court's analysis need not address Gasperini or the citizenship of Chanel.

4

>> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Under New Jersey law, personal service is the primary method of obtaining personal jurisdiction. *See* N.J. Ct. R. 4:4-4(a), 4:4-5(a). A party accomplishes personal service by delivering:

> a copy of the summons and complaint to the individual personally, or by leaving a copy thereof at the individual's dwelling place or usual place of abode with a competent member of the household of the age of 14 or over then residing therein, or by delivering a copy thereof to a person authorized by appointment or by law to receive service of process on the individual's behalf. . . ."

N.J. Ct. R. 4:4-4(a)(1). An individual's place of employment does not qualify as their "usual place of abode" or dwelling required under the Rules. *Reddy*, 2009 WL 2413673, at *4 ("The weight of persuasive authority, including authority from this jurisdiction, concludes that delivering service to an employer's office is not delivery to an individual's dwelling place.").

Plaintiff, who has the burden to establish that service was proper, has failed to show that she served Poulter appropriately under the applicable Rules. And a review of the record indicates that Plaintiff did not properly serve Poulter. Plaintiff's affidavit of service does not demonstrate that Plaintiff's process server, Marian Zwierzynski, served Poulter personally or left a copy of the summons and complaint with a competent household member who was over the age of 14 and resided therein, as required by New Jersey Court Rule 4:4-4(a)(1). Instead, Ms.

Zwierzynski states that she left a copy of the summons and complaint with Gino Passano, a purported security officer for Chanel, who she claims was authorized to accept service on behalf of Poulter.  *Id.*  Service in this manner is deficient according to the New Jersey Court Rule 4:4-4 because it occurred at Poulter's place of employment rather than at his "dwelling place or usual place of abode[.]"  N.J. Ct. R. 4:4-4(a)(1); *see also Reddy*, 2009 WL 2413673, at *4.

Plaintiff argues that service was proper when the summons and complaint was handed to Mr. Passano, because Mr. Passano indicated to Ms. Zwierzynski that he had to call his superior and get authorization before he could accept the documents.  *See* Cert. of Marian Zwierzynski, D.E. 12-2, ¶ 3; *see also* Br. in Opp., D.E. 12.  Ms. Zwierzynski certifies that once Mr. Passano spoke to his superior, Mr. Passano indicated that he could accept the documents for Chanel and Poulter, but not Gasperini because Chanel no longer employed her.  *Id.*  Thus, Plaintiff maintains service on Poulter by these means was proper.  Br. in Opp., D.E. 12, at 4-5.  It appears from Plaintiff's argument that she contends that service of process on Mr. Passano was proper as the authorized agent of Poulter in accordance with Federal Rule of Civil Procedure 4(e)(2)(C).  The Court disagrees.

Plaintiff does not claim to have served Poulter or Poulter's authorized agent.  Instead, Plaintiff served a security officer at Poulter's place of employment.  Plaintiff does not provide any evidence to show that this security officer was an agent "authorized by appointment or by law to receive service of process" on behalf of Poulter in  accordance with Federal Rule of Civil Procedure 4(e)(2)(C).  Simply because an Employee A agreed to accept service on behalf of Employee B, without any evidence Employee B so authorized Employee A, does not demonstrate that Employee A was authorized to accept service.  *Gabros v. Shore Medical Ctr.*, 724 F. App'x 119, 122 (3d Cir. 2018) (plaintiff must present some evidence which establishes

6

that person served was actually authorized to accept service of process on behalf of defendant). Plaintiff provides no evidence to show Mr. Poulter authorized Mr. Passano to accept service on his behalf. *Id.*; *see also Snyder v. Swanson*, 371 F. App'x 285, 286-87 (3d Cir. 2010) (individual defendants were not properly served where their attorney, who was not authorized to accept service on their behalf, was served process); *Blount v. TD Bank, N.A.*, No. 20-18805, 2021 WL 2651760, at *3 (D.N.J. June 28, 2021) (leaving a summons and complaint at an individual defendant's place of employment does not constitute proper service); *Laffey v. Plousis*, No. 05-2796, 2008 WL 305289, at *5 (D.N.J. Feb. 1, 2008) (service was improper where plaintiff failed to show that United States Marshal's Office employee had either actual or apparent authority to accept service on behalf of certain individual defendants). That Mr. Passano's superior at Chanel generally authorized Mr. Passano to accept Mr. Poulter's documents, is plainly insufficient to establish that Mr. Passano ever was authorized to accept service of process on Mr. Poulter's behalf. *See Kornea v. J.S.D. Management, Inc.*, 336 F. Supp. 3d 505, 509 (E.D. Pa. 2018) (holding that fact that defendant's secretary could accept defendant's mail did not establish that the secretary also was defendant's agent authorized to accept service). The Court therefore concludes that Plaintiff has failed to meet her burden of showing that Poulter was properly served. Thus, complete diversity exists between the parties and removal was proper. Accordingly, the Court respectfully recommends that the District Court deny Plaintiff's motion to remand.

### B. Chanel's Cross Motion to Dismiss or Transfer

Having concluded that Plaintiff's motion to remand should be denied, the Court now turns to Chanel's motion to dismiss and compel arbitration, or alternatively, transfer this matter to the United States District Court for the Southern District of New York. For the reasons set

forth herein, this Court recommends that the District Court grant Chanel's request to transfer this matter to the Southern District of New York and defer to that Court concerning motion to dismiss and compel arbitration.

Title 28, Section 1404(a) of the United States Code provides that for the "convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." An action might have been brought in the transferee district if: (1) the transferee district has subject matter jurisdiction over the action; (2) venue is proper in the transferee district; and (3) the transferee district can exercise personal jurisdiction over the parties. *D'Ambola v. Daily Harvest, Inc.,* No. 22-6316, 2023 WL 3720888, at *2 (D.N.J. May 30, 2023). After concluding that the transferee district is one in which the action could have been brought, the Court must determine whether transfer is in the interests of justice and convenience. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49, 63 (2013).

Section 1404(a) exists to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Ricoh Co. v. Honeywell, Inc*., 817 F. Supp. 473, 479 (D.N.J. 1993) (internal citations and quotations omitted). The Third Circuit has recognized that the moving party bears the burden of establishing the propriety of transferring the case "with any affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a)." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973).

### 1. Whether this Action Could Have Been Filed in the Southern District of New York

As a threshold matter, the Court must first determine whether the Southern District of New York would have subject matter jurisdiction over the instant claims. The Court finds that it would. As set forth above, it does not appear that Plaintiff successfully served Mr. Poulter. Accordingly, Plaintiff and Chanel are citizens of different states and the amount in controversy exceeds $75,000.00. Notice of Removal, D.E. 1, ¶¶ 7, 8, 10, 12, 17. Thus, the Court finds that the Southern District of New York would have diversity jurisdiction over this matter in accordance with 28 U.S.C. § 1332.

Next, the Court considers whether the Southern District of New York has personal jurisdiction over Chanel. Chanel is "a corporation organized and existing under the laws of the State of New York with a principal place of business in New York." Notice of Removal, D.E. 1, ¶ 10. Because Chanel is located in the Southern District of New York, that Court has personal jurisdiction over Chanel. *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (finding that general jurisdiction can be exercised over a corporation in a jurisdiction "in which the corporation is fairly regarded as at home").

Finally, the Court must determine if the Southern District of New York would be an appropriate venue. Venue in actions based upon diversity jurisdiction is appropriate in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  Again, as Chanel resides within the Southern District of New York, the proposed transferee district is an appropriate venue.  Accordingly, the Court finds this matter might have been brought in that Court.

### 2. Forum Selection Clause

Having concluded that this matter could have been brought in the Southern District of New York, the Court now turns to Chanel's contention that the Employment Agreement on which Plaintiff bases her breach-of-contract claim contains a valid forum selection clause governing Plaintiff's claims.  See Cross Motion, D.E. 11, at 17-18.  The United States Supreme Court has instructed that if a contract contains a valid forum selection clause, then courts must "transfer the case unless extraordinary circumstances unrelated to the convenience of parties clearly disfavor a transfer."  See Atl. Marine Constr. Co., 571 U.S. 49, 50-51.  Similarly, when a party seeks a transfer pursuant to § 1404 because of a forum selection clause, the Court has instructed courts to give the clause controlling weight, and plaintiff's choice of forum little if any weight.  Id. at 51.  Id.  In that instance, a party can defeat transfer only if it can show that there are prevailing public interest factors, such as court congestion, or a special need to have localized controversies decided by courts familiar with the applicable law. See id. at 581 n. 6. Therefore, this Court must first resolve whether the Employment Agreement's forum selection clause applies in this action.

Enforcement of a forum selection clause is a procedural issue rather than a substantive issue.  "In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law."[2]  See Wall Street, 189 Fed. App'x at 84.  In the

---

[2] Although federal law is applied when determining the effect of a forum selection clause, state law is applied when construing the terms of a forum selection clause. See Wall Street v. Aubrey,

10

Third Circuit, forum selection clauses are presumptively valid and enforceable. *Id.* at 85; *Int'l Business Software Solutions, Inc. v. Sail Labs Tech., AG*, 440 F. Supp. 2d 357, 362 (D.N.J. July 25, 2006); *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. May 18, 2000). Hence, the party opposing the forum selection clause bears the heavy burden of making a "strong showing" that the clause is unreasonable, and therefore unenforceable. *See Cadapult*, 98 F. Supp. 2d at 565 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).

Generally, a forum selection clause is unreasonable if: (1) it is the result of fraud or overreaching; (2) its enforcement would violate the forum's strong public policy; or (3) its enforcement would, in the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. *Id.*; *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995) (stating that "[w]here the forum selection clause is valid, which requires that there have been no fraud, influence, or overwhelming bargaining power . . . the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum") (internal quotation marks omitted).

First, Chanel argues that because the forum selection clause is valid and enforceable, this matter must be transferred to the Southern District of New York. Cross Motion, D.E. 11, at 17-18. The Court presumes, as it must, that the forum selection clause in the Employment Agreement is valid and enforceable against Plaintiff. *See Wall Street*, 189 F. App'x at 85 (forum selection clauses are presumptively valid). Thus, it is Plaintiff's heavy burden to demonstrate that the forum selection clause is unenforceable. *D'Ambola*, 2023 WL 3720888, at *3.

---

189 Fed. App'x 82, 85 (3d Cir. 2006); *Bel-Ray Co, Inc. v. Chemrite (Pty.) Ltd.*, 181 F.3d 435, 441 (3d Cir. 1999).

11

However, Plaintiff does not challenge the forum selection clause's validity. Indeed, Plaintiff brings a breach of contract claim for Chanel's failure to pay her severance benefits in accordance with the Employment Agreement, the very agreement that contains the forum selection clause at issue here. *See* Am. Compl., D.E. 1-2, ¶¶ 21-22. Plaintiff makes no substantive arguments regarding the forum selection clause's validity. Instead, Plaintiff posits that Chanel's request to transfer is moot because this Court lacks diversity jurisdiction over this matter. Br. in Opp., D.E. 12, at 7. Because Plaintiff provides no argument to challenge the validity and enforceability of the forum selection clause, the Court concludes that the clause is valid and enforceable.

Second, the language of the forum selection clause plainly encompasses these claims. The forum selection clause applies to "any suit, action or proceeding involving this Agreement[.]" Employment Agreement, D.E. 11-5, at ¶ 14. Here, Plaintiff alleges a sexual harassment claim arising out of her employment with Chanel, and a breach of contract claim due to Chanel's failure to pay her severance benefits in accordance with the Employment Agreement, Exhibit A, ¶ 7. Am. Compl., D.E. 1-2, ¶¶ 21-22; *see also* Employment Agreement, D.E. 11-5, Ex. A, ¶ 7. Therefore, the Court concludes that the Employment Agreement encompasses Plaintiff's claims. Even if Plaintiff had challenged Chanel's transfer argument, she could not both rely on the Employment Agreement while also arguing that it does not encompass her claims. Thus, the Court finds that the Employment Agreement encompasses Plaintiff's breach of contract claim.

Plaintiff does not argue that the forum selection clause was the result of overreaching or fraud, or that enforcement of the clause would be contrary to public policy or result in litigation in a location so inconvenient as to be unreasonable. As already noted, Plaintiff in fact advances no reason why the forum selection clause is unenforceable. Nor can the Court find from the

evidence before it that enforcement of the forum selection clause would be contrary to public policy or result in litigation in a location so inconvenient as to be unreasonable or the clause was the result of overreaching or fraud.  *See Cadapult*, 98 F. Supp. 2d at 565.  Accordingly, the Court finds that Plaintiff has not met her burden of establishing that transfer to the forum indicated in the forum selection clause is unwarranted.  Given the presumption of validity and the lack of any argument by Plaintiff to the contrary, the Court finds the forum selection clause is valid and enforceable.

### 3. Public Interest Factors

Because the forum selection clause applies and the Court must give the clause "controlling weight," only public interest factors can prevent transferring this matter to the Southern District of New York.  *See Atl. Marine Constr. Co.*, 571 U.S. at 51.  Hence, the Court must consider whether transfer would result in easy, expeditious, or less expensive litigation.  *See Jumara*, 55 F.3d at 879.  The "public interests" factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty arising from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable law.  *See Jumara*, 55 F.3d at 879-80.  Balancing these factors also weigh in favor of transferring this case to the Southern District of New York.

Chanel contends that the Southern District of New York would have no issue enforcing a judgment because New York is Chanel's home state.  Cross Motion, D.E. 11, at 17.  As a general proposition, the Court agrees that it would be easier to obtain a judgment against Chanel in New York because Chanel is a citizen in that state.  *See United States ex rel Groundwater Tech., Inc. v. Sevenson Envtl. Servs., Inc.*, No. 00-311, 2000 WL 33256658, at *5 (D.N.J. 2000)

13

(recognizing that it is easier to enforce a judgment obtained in a defendant's home state). Thus, the Court finds this factor favors transfer.

The Court next considers whether the remaining public interest factors weigh in favor of transfer. Although the allegedly injured party is a citizen of New Jersey, the Court finds that transfer to the Southern District of New York will allow for an easier, more expeditious, and less expensive litigation. *See Jumara*, 55 F.3d at 879. At a minimum, transfer would not materially render the litigation more difficult or protracted. This matter is in its infancy and discovery has not yet begun. Thus, there are no practical considerations to keep the matter in New Jersey. None of the remaining public interest factors weigh against transferring this matter to the Southern District of New York.

Thus, after considering whether the public interest factors are sufficient to defeat the "controlling weight" of the forum selection clause, *see Atl. Marine Constr. Co.*, 134 S. Ct. at 581-85, this Court agrees with Chanel that this action is governed by the Employment Agreement's forum selection clause. Plaintiff and Chanel must therefore "submit to the jurisdiction of all federal and state courts sitting in the State of New York, New York County" in accordance with the Employment Agreement. Employment Agreement, D.E. 11-5, at ¶ 14.

**4.  Request to Dismiss and Compel Arbitration**

The Court does not reach Chanel's request that the Court dismiss this action and compel arbitration in deference to the transferee court. Accordingly, the Court recommends that the District Court deny without prejudice Chanel's request to dismiss this action and compel arbitration. *See Darrow v. Ingenesis*, No. 19-17027, 2020 WL 2059946 (D.N.J. Apr. 29, 2020) (denying Defendants' motion to dismiss or stay where case was being transferred so that transferee court could make those determinations).

### IV.     CONCLUSION

For the reasons set forth above, the Undersigned respectfully recommends that the District Court deny Plaintiff's motion to remand, grant Chanel's request to transfer this matter to the United States District Court for the Southern District of New York, and deny without prejudice Chanel's request to dismiss this action and compel arbitration.

The parties are reminded that under 28 U.S.C. § 636, and L. Civ. R. 71.1(c)(2), they have fourteen days to file and serve objections to this Report and Recommendation.


Date: January 29, 2024

                                             *s/ Michael A. Hammer*
                                             **UNITED STATES MAGISTRATE JUDGE**